UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                Plaintiff,

                                No. 13-cv-20334

v.

                                HON. Gershwin A. Drain

Lee Allen Mills,

                Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

### I.    Introduction

On March 13, 2013, Michigan Department of Corrections ("MDOC") parole officers, Wayne County Sheriffs, Michigan State police, and Detroit Police officers arrived at the home of Defendant Lee Allen Mills.  Defendant's fiancé allowed the officers into the home.  They located Defendant at the bottom of a staircase leading into the basement, placed him under arrest and conducted a search of the home.  Defendant informed them of the presence of an assault rifle and told them of its location in the home, and the Defendant's fiancé consented to their entry into and search of the home.

On April 20, 2013, a grand jury indicted Defendant for violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm.  On July 15, 2013, Defendant filed a Motion to Suppress the firearm as the product of a warrantless search and seizure in violation of his Fourth Amendment rights.  Defendant claims the officers searched his home without a warrant and

arrested him without a warrant.  The government argues the officers had a valid arrest warrant, but if they did not, the search would still be lawful because Defendant and his fiancé gave consent, the search fits within the special needs exception, and the search was incident to a valid arrest.

The Court conducted an evidentiary hearing and heard arguments on the Motion on September 19, 2013.  The issue of Defendant's fiancé' consent to enter the home and conduct a search became an issue at the hearing.  The Court ordered supplemental briefing on the issue of her consent to enter the home.  Both parties have fully briefed the Motion and they have completed supplemental briefing as well.  No further hearing is necessary.  For the reasons that follow, the Court will DENY Defendant's Motion.

## II.    Facts

Defendant lives with his fiancé ("Ms. Graddy"), their daughter and his fiancé's uncle on Blackstone Street in Detroit Michigan.  At approximately 7:30 a.m. on March 13, 2013, a parole officer from MDOC, as well as officers from Wayne County Sheriff, the Michigan State police, and Detroit police arrived at his home to arrest him.  Ms. Graddy let them into the home.  She insists that she let them in the home and allowed the search after a show of force and threats to "tear the house up."  Shortly after entering, Defendant notified the officers he was at the bottom of the staircase to the basement.  The officers arrested Defendant and asked him if there were any weapons in the home.  He stated he had a firearm.  On March 18, 2013, the United States filed a Complaint with this Court alleging Defendant was a corrections center escapee, parole absconder, and felon in possession of a firearm.  On the same day, a magistrate judge issued a warrant for Defendant's arrest.

There is a factual dispute about the presence of a warrant and whether Defendant and his fiancé consented to a search of the home.  The government claims officers arrived at Defendant's home with a warrant to arrest Defendant for his escape from a correction center June 14, 1994, which is the date Defendant states his parole commenced.  (Def.'s Mot at 1).  The warrant issued by Magistrate Judge Randon is not the warrant the government claims to have.  The government has not submitted the warrant it alleges it had that day as either a docket entry or exhibit attached to its response to Defendant's Motion.

The officers all testified they had an arrest warrant although one was never produced. However, no evidence to the contrary was produced.  So, the Court accepts the testimony that the officers had an arrest warrant.

### III.    Law and Analysis

#### A.  Standard of Review

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated. . . ."   U.S. Const. Amend IV.   Searches conducted without warrants are per se unreasonable.  *Mincey v. Arizona*, 437 U.S. 385,390 (1978).  Warrantless searches and seizures inside the home are "presumptively unreasonable."  *Kentucky v. King*, _ U.S._, 131 S. Ct. 1849, 1856 (2011).

A warrantless search and seizure is not unreasonable when it is executed pursuant to a special need.  *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987).  In certain circumstances, a warrant and probable cause are impractical.  *Id*.  Supervision of probationers and parolees is a circumstance where the special needs beyond normal law enforcement supersede the warrant and probable cause requirement.   *Id*. at 874.   In those circumstances, a statute or regulation

authorizing warrantless searches of probationers and parolees is reasonable under the Fourth Amendment and responds to the special needs of the probation and parole system will be lawful. *Id*. at 880.

Also, a search is not unreasonable if a person with a privacy interest in the item to be searched gives free and voluntary consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). It is the government's burden to establish "through 'clear and positive testimony' that the consent to search was given voluntarily." *United States v. Ivy*, 165 F. 3d 397, 402 (6th Cir. 1998); *see Schneckloth*, 412 U.S. at 248. "Consent is voluntary when it is 'unequivocal, specific, and intelligently given, uncontaminated by any duress or coercion." *Id*. The court must examine the totality of the circumstances to determine whether the fiancé's consent was given voluntarily. *Id*.; *see United States v. McCaleb*, 552 F. 2d 717, 720 (6th Cir. 1977).

### B.  Defendant's Motion

Defendant argues the officers did not have a warrant or consent to search his home. He also argues the officers' search and seizure exceeded the special needs exception for parolees set forth in *Griffin*. Defendant acknowledges the Fourth Amendment does not prohibit a suspicion-less search of a parolee's home, but the search must comply with the terms of the parolee's release. *United States v. Samson*, 547 U.S. 843, 854 (2006). The Sixth Circuit Court of Appeals analyzes the regulation or statute that authorizes the search under the Fourth Amendment's reasonableness standard. *United States v. Loney*, 331 F.3d 516, 520 (6th Cir. 2003).

In *Loney*, Ohio police and a probation officer arrested and searched a defendant in his mother's home after repeated violations of his parole. *Id*. at 518. In the search, officers found an AK-47 assault rifle. *Id*. at 519. The *Loney* defendant argued the search and seizure was unreasonable. *Id*. at 520. The Sixth Circuit Court of Appeals held the special needs of the

probation system that justified the warrantless search in *Griffin* mirrored those of the parole system. *Id*; *see United States v. Payne*, 181 F.3d 781, 787 (6th Cir. 1999). Thus, the *Loney* court upheld the district court's conviction of the defendant. *Loney*, 331 F.3d at 523. The court applied the rule in *Griffin* under a two-step analysis. First, it assessed the Ohio regulation authorizing the search for reasonableness under the Fourth Amendment's reasonableness standard. *Id*. at 520. Second, upon determining the statute or regulation is reasonable, the *Loney* court proceeded to analyze the facts of the case to ascertain whether they satisfied the regulation. *Id*. at 521. Applying the two-part test, the court concluded that the statute was reasonable under the Fourth Amendment and the facts of the search justified the search. *Id*.

According to the Defendant, the special needs exception did not apply because the search was not executed pursuant to a statute, regulation, or terms of parole. Defendant directs the Court to MICH. COMP LAWS § 791.236(19), which states a parole order requires the parolee to sign written consent to searches of his person and property by a parole or peace officer. This statute became effective in January of 2013, however, Defendant's parole commenced in June of 1994. Defendant never signed such an order, so he never consented to such a search. Therefore, the Defendant urges the Court to conclude the government cannot meet the first prong of the *Griffin* test rendering the search illegal. Defendant overlooks a Michigan regulation authorizing searches of parolees that applies to him. Current regulations allow parole agents to conduct warrantless searches. MICH. ADMIN. CODE r. 791.7735 (2013). A warrantless search of a parolee can take place when there is reasonable cause to believe "a violation of parole exists" *Id*. The parole agent must submit a report to his supervisor as soon as possible after the search justifying the reasons for the search and describing the location to be searched and items to be

seized. *Id.* The parolee can also consent to a search. *Id; see United States v. Koenig*, Case No. 13-20238, WL 5231982, at *7 (E.D. Mich. Sept. 17, 2013).

The government argues the officers' actions were legal because the officers had a warrant and believed Defendant was in the home. *Payton v. New York*, 445 U.S. 573, 586 (1980). Pursuant to their valid arrest, the officers had the authority to search the immediate area and the Defendant incident to a lawful arrest and the authority to sweep the premises for police safety. *Chimel v. California*, 395 U.S. 752; *see Maryland v. Buie*, 494 U.S. 325 (1990). Lastly, the government argues the search is within the scope of the special needs exception for probationers/parolees. *Griffin*, 483 U.S. at 880.

In the absence of a search warrant for the entire home, the government relies on *Chimel* for the proposition that the officers had the authority to search Defendant and the basement where the arrest occurred. *Chimel* stands for the proposition that an arresting officer can search the immediate area of an arrest when executing an arrest warrant in the arrestee's home. *Chimel*, 395 U.S. at 768.

The government argues it conducted a lawful sweep of the home for officer safety. In *Buie*, officers had a valid arrest warrant to arrest defendant in his home after he and another suspect robbed a restaurant. *Buie*, 494 U.S. at 328. Because the *Buie* defendant had an accomplice, the arresting officer searched the premises for him as well. *Id.* at 329. The Court held an officer can, without probable cause or reasonable suspicion, look in closets and other areas immediately adjoining the place of arrest where an attack could be launched. *Id.* at 334. However, the sweep must be contained to places where an officer can find a person. *Id.* at 335. The Court held the sweep must be in conjunction with the in-home arrest, and based on a

reasonable belief and articulable facts the area the officer is sweeping contains threats to his safety. *Id*. at 337.

These arguments are predicated on the presence of a valid arrest warrant. Even though the government did not produce an arrest warrant, the Court believes the officers had a valid arrest warrant based on Defendants absconding from the halfway house. In support of the government's other arguments, it must show the special needs exception applies or Defendant and/or Ms. Graddy gave consent.

 In the absence of a warrant and exigent circumstances, the government must prove their search of the Defendant's home complies with *Griffin*. The government must prove the applicable regulation, MICH. ADMIN. CODE r. 791.7735, is reasonable under the Fourth Amendment and the facts surrounding the search justify applying the statute. The Michigan regulation mirrors the language of the regulations in *Loney* and *Griffin*. Furthermore, it places an additional duty on the parole agent to explain the search to a supervisor if the agent conducted the search without consent. Thus, the regulation satisfies the Fourth Amendment's reasonableness standard. The government failed to produce the MDOC report under the MICH. ADMIN. CODE r. 791.7735(2) in order for the search to be legal. The government cannot justify the search under *Griffin* because it cannot prove it complied with the applicable parole regulation. Therefore, the government must show Defendant and/or Ms. Graddy gave consent.

### C. Supplemental Briefing – Consent to Enter the Home and Conduct the Search for the Rifle

At the hearing, neither the government nor the Defendant contested that the Defendant immediately gave himself up to the police and informed them of the presence of the rifle. However, Ms. Graddy's consent to the officers' entry and to their search was contested. In the original briefing, the government stated Ms. Graddy let them in the home and consented to the

search.  At the hearing and in briefing, Ms. Graddy stated she never gave the officers consent to enter the home or to search for the rifle.

The government has the burden of establishing by clear and positive testimony that consent to the search was given voluntarily.  *Schneckloth*, 412 U.S. at 219; *see Ivy*, 165 F. 3d at 402; *see also Bumper v. North Carolina*, 391 U.S. 543, 548 (1968) (the government must show there was more than a mere acquiescence to a claim of lawful authority).  The court evaluates the totality of the circumstances to determine whether consent was voluntary.  *United States v. McCaleb*, 552 F.2d 717, 720 (6th Cir. 1977).  Also the court considers more subtle forms of coercion that "could flaw the consenter's judgment."  *Schneckloth*, 412 U.S. at 227.

At the hearing, officers present at the arrest and Ms. Graddy testified as to what occurred. Officer Cooklin of the Michigan Department of Corrections Absconder Unit testified.   He testified that he and other officers approached the home and Ms. Graddy let them in when they reached the door.  (Tr. at 11, 19).  As the officers entered the home, they indicated they were looking for Defendant.  *Id*. at 12.  Defendant was at the landing of the basement stairs, and surrendered himself to the officers.  *Id*.  Cooklin further testified that once the Defendant was under the officers' control, he asked Graddy if others were in the home.  *Id*. at 14.  She told the officers that she, defendant, and her daughter were in the home and there was a "rifle type weapon" in the home.  *Id*.

Ms. Graddy testified that the officers forced their way into the home.  (Tr. at 45).  She claims she did not get a chance to respond to the officers' question of whether Defendant was in the home because he answered alerting them he was present.  *Id*.  According to Ms. Graddy's testimony, officers took her to the bedroom and questioned her.  *Id*. at 46.  The officers asked her about the presence of weapons, and she said there were no weapons in the home.  *Id*.  Then, Ms.

Graddy testified that the officers told her to tell them about weapons or they would get a search warrant and "tear [her] house up." After that, she gave consent. This is when the officers went into the basement without her permission and located the rifle. *Id*. A few days after the arrest, she made a statement to an ATF agent who visited her at job about the event. *Id*.

Ms. Graddy's cross-examination covered more details about her visit with the ATF agent. She wrote a statement concerning what took place the morning of the arrest and search. (Tr. at 51). The statement did not address forcible entry into the home or threats to tear the house up to find the rifle. Rather, the purpose of the statement was to make it clear that the rifle the officers found was not hers. (Tr. at 51). The agent did not directly question her as to consent to enter the home and search. *Id*. Ms. Grady says she mentioned the threat of tearing up her house, but the threat and her assertion she did not give consent do not appear in the statement. *Id*. Her failure to reference a lack of consent has some impeachment value. After further questioning, she testified that she assumed she did not make any such statement to the ATF agent she spoke with at her job. *Id* at 52.

Therefore, the Court concludes that the testimony of Officer Cooklin and his fellow officers regarding consent to search the home is credible. The government has met its burden to show through positive testimony that consent was given voluntarily. Totality of the circumstances indicate Ms. Graddy intelligently and voluntarily consented to a search of the house.

## IV.   Conclusion

The government's argument that it had a warrant and its search was in compliance with the Griffin special needs standard is unavailing. However, the government has shown it lawfully

obtained consent to enter and to search the home.  Therefore, the Court will DENY Defendant's Motion to Suppress.

IT IS SO ORDERED.

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN